# OHIO APPELLATE AND CIRCUIT COURT REPORTS.

## NEW SERIES—VOLUME XXVI.

CAUSES ARGUED AND DETERMINED IN THE COURTS OF
APPEAL AND THE CIRCUIT COURTS
OF OHIO.

## CHILD KILLED BY HEAVY BOX FALLING UPON IT.

Court of Appeals for Hamilton County.

DAVID H. SCOTT, ADMINISTRATOR OF THE ESTATE OF EDWARD
GEORGE NAAS, DECEASED, v. GEORGE WINGENBERG.

Decided, July 6, 1916.

*Negligence Per Se—Where an Accident Results from Violation of a
Municipal Ordinance—Doctrine of Res Ipsa Loquitur Applied to
Case of a Child Killed by Fall of Mortar Box on the Sidewalk-
Error in Attempting to Show Contributory Negligence by Cross-
Examination of Plaintiff's Witness.*

1. Where injury results from the leaving of a heavy movable article
   on or over the sidewalk, in violation of a municipal ordinance, a
   case is presented of negligence *per se*.
2. Moreover, where a child two years old is killed by the falling upon
   it of a heavy mortor box, which had been left leaning against a
   building, with the lower end resting on the sidewalk and at such
   an angle as to probably create a condition of unstable equilibrium,
   the doctrine of *res ipsa loquitur* is applicable, and in the absence
   of any explanation as to how the box happened to fall, it is er-
   ror, in an action for death of the child, to direct a verdict for the
   defendant.

3. Inasmuch as it is not incumbent upon plaintiff to show contributory
    negligence, it is error to permit counsel for the defendant to cross-
    examine plaintiff's witness in such a manner as to tend to estab-
    lish such negligence, but in a case where the court arrested the
    case from the jury the error was without prejudice.

*Gasser & Scott,* for plaintiff in error.

*Coleman Avery, Constant Southworth* and *Harry L. Linch,*
for defendant in error.

GORMAN, J.

The action below was one to recover damages by the plaintiff,
as administrator of the estate of Edgard George Naas, deceased,
a minor child two years of age, for the alleged wrongful death of
said child by reason of the negligence of the defendant.

The record discloses that on the 13th day of March, 1915, at
ten o'clock in the morning, the decedent, Edward George Naas,
was killed by the overturning of a heavy mortar box belonging
to the defendant, George Wingenberg, which had been left on the
sidewalk of Campbell alley, or Campbell street, in the rear of
his premises, 1618 Logan street. The box had been left there the
night before by an employee in the usual course of his employ-
ment. Campbell street, or alley, where the mortar box was
placed, was one of the public streets of the city of Cincinnati,
about twenty feet wide, with a thirty-four inch sidewalk upon
the side towards the defendant's property. This street was
paved, and so was the sidewalk. The record of the evidence
showed that a great number of children were accustomed to con-
gregate in the alley, or street, and play there, and this fact was
known to the defendant. The mortar box was slanting up
against the wall of his stable, or barn, and was about six feet
long and thirty-nine inches in width and about twelve inches
in depth. The box was found overturned in the alley, and the
child with a crushed skull was found under it. There was no
evidence as to how the box fell; whether it fell of its own weight
or was pushed over by someone or by the child does not appear.
There was evidence tending to show that this box was leaning
up against the wall, one witness testifying that the angle made

by the box was 85 degrees, which would make the box stand almost parallel with the wall of the stable. There was also evidence tending to show that the box was in a state of unstable equilibrium. It weighed in the neighborhood of two hundred pounds. The child was found under this box within a very few minutes after it had been killed.

There is an ordinance of the city of Cincinnati prohibiting any person from keeping or permitting to remain any box, barrel, crate, etc., or other movable article on or over any street, sidewalk or thoroughfare in the city, longer than a reasonable time necessary in the transaction of business loading and unloading, to remove said articles. This ordinance was passed under the grant of power given to the councils of municipalities by Section 3714, G. C., which imposes the duty upon municipalities and the councils thereof to have the care, supervision and control of public streets, avenues, alleys, sidewalks, etc., and shall cause them to be kept open, in repair and free from nuisance. This ordinance was passed manifestly for the protection and safety of the public in using the streets and sidewalks.

At the close of plaintiff's evidence, upon motion of defendant, the court instructed the jury to return a verdict for the defendant, which was accordingly done.

Several errors are complained of by the plaintiff in error as a reason for asking this court to reverse the judgment of the superior court.

It is claimed that the court erred in arresting the case from the jury and in instructing a verdict for the defendant. We are of the opinion that the evidence in this case discloses a case of *res ipsa loquitur*. The evidence discloses that this box fell; but whether it fell of its own weight because it was in a state of unstable equilibrium, or was pushed over by the child or someone else does not appear. The rule of *res ipsa loquitur* invoked is stated as follows in *Jones' Commentaries on Evidence*, Blue Book, Volume 1, Section 15a:

"There is another class of cases in which it is held that where the thing is shown to be under the management of the defendant

or his agent, and where an accident in the ordinary course of events does not happen when the business is properly conducted, the accident itself raises a presumption of negligence in the absence of any explanation. The English case where a passer-by in a street was hurt by a barrel of flour falling from a warehouse window is an illustration of this group of cases. (See *Byrne & Boadle*, 2 Hurl & C., 722.) The same principle is illustrated by a New York case, in which it was held that since the owner of a building adjoining a street is under obligation to take reasonable care that the same shall not fall upon the passers-by, if such an accident happens without any proof of explanatory circumstances, negligence will be presumed. (*Mullen* v. *St. John*, 57 N. Y., 567.) In such cases the facts are said to speak for themselves *res ipsa loquitur.* But in all such cases the cause of the accident must be clearly connected with the defendant, as being by his act or under his control, before negligence can be presumed.''

Now in the case under consideration the evidence discloses that this box belonged to the defendant and that it was under his control and management, and was placed by him or his servant in the street on the sidewalk the night before it fell upon this child. It is manifest to us that this box could not have fallen on this child unless it were either pushed over upon him by someone, or was in a state of unstable equilibrium; and it appears to us that the fact that it fell upon the child raised a presumption of negligence which was encumbent on the defendant Wingenberg to rebut and to show that he was not guilty of any negligence which proximately caused the death of this child.

This court, in the case of *Roth Packing Co.* v. *Williams*, 20 C.C.(N.S.), 362, held that the fact that an automobile truck came out of the garage or premises of the Roth Packing Co. and ran over and killed a boy, without showing what caused the truck to move out upon the street, presented a case in which the rule of *res ipsa loquitur* should be applied. This court in that case approved the following language embodied in the charge of the lower court:

''No direct evidence has been offered of any particular and specific act of negligence of the defendant that caused the automobile to come out of the building   *   *   *   but it is claimed

by the plaintiff in this case that the fact that the automobile came out in the way it did is itself evidence of negligence, and I will state to you that it is the law that when a thing which causes the injury is shown to be under the management of the defendant and the accident is such that in the ordinary course of things does not happen if those who have the management use proper care, it affords evidence in the absence of explanation that the accident arose from want of care.''

We are of the opinion, therefore, that when the plaintiff in this case established the fact, as it did, that this mortar box had fallen upon this child and killed it in the street, a case was presented which required the defendant to explain how it happened and to show that it did not fall becase of any negligence on the part of the defendant. Furthermore, we think the evidence in this case tended to show that the box was in a state of unstable equilibrium and likely to fall. The fact that it might fall upon a person in the street was a circumstance which should have been taken into consideration by the defendant when he placed the box in this street. We are of the opinion that the falling of this box, whether by reason of the fact that it was in a state of unstable equilibrium or because it was pushed over by some one in the ordinary course of things was an event which should have been contemplated as not entirely improbable, and that the defendant who placed the box in the street should have anticipated the reasonable and probable consequences which might arise from the falling of this box either of its own weight or from being pushed over.

In *Earl* v. *Crouch*, 40 N. Y. St., 847, a case is presented where plaintiff's administrator brought an action to recover damages for the death of the deceased by the negligent act of the defendant. The defendant caused to be placed near the sidewalk upon one of the streets of the city of Rochester a pile of lumber five feet wide and three feet six inches high. The lumber was piled by placing one piece over another in tiers. Nothing was used to bind the tiers together. The tier nearest the sidewalk leaned about two inches from a perpendicular away from the remainder of the pile. The deceased was a child four years and eleven

months old, residing upon the street near the pile.  He went from his home and was found dead under the lumber which composed the tier next the sidewalk.  All this tier except the three lower pieces had fallen out towards the sidewalk upon the child.  The position of the deceased's body and arms indicated that he had taken hold of the lumber with his hands with a view probably of climbing upon the pile, and thereby caused the lumber to fall.  There was a recovery had in the case, and the Appellate Division of the Supreme Court in passing upon the case, said:

"The appellant does not claim that the child was *sui juris,* or that its parents were guilty of negligence contributing to its death.  At the close of the testimony defendant's counsel asked the court to direct a verdict for the defendant.

"The request was refused, and defendant duly excepted. There was abundant evidence that the lumber was piled in a negligent careless manner instead of piling it so that the tiers would rest against and support each other; the tier that fell was so piled that the slight force applied to it by the child toppled it over.  Fixing such a trap upon a street in an inhabited part of a city, with the strong probability that children would be playing about it at all hours of the day was reckless, culpable negligence."

In the case just cited there was no evidence to show how or why the lumber pile had fallen upon this child.  The court evidently held that the accident itself furnished evidence of negligence.

In the case of *Holly* v. *Bennett,* 46 Minn., 386, a child was injured by the falling of lumber from a pile while it was in the street.  A recovery was had in the case.  The Supreme Court of Minnesota in passing upon the case, p. 387, says:

"Upon a careful examination of the record we find that the only other assignment of error of sufficient importance to merit attention is as to the sufficiency of the evidence to establish the alleged negligence of the defendants.  Upon this issue the evidence is not strong or persuasive, but we think there was enough to go to the jury.  It was the duty of the defendants to exercise reasonable care in erecting their lumber piles along a street

where children or others were likely to pass or congregate, and the measure of their responsibility was the extent of danger to be apprehended, under the circumstances of the case. The evidence tends to show that the boy was found between two lumber piles (which were built over into the street) under a stick of timber which had fallen on him and broken his leg. Witnesses familiar with the locality stated that the top timbers were carelessly piled, and that the 'inside pile was piled very carelessly.' "

In the case at bar the defendant knew many children were accustomed to pass along this street and to make it a playground. He should, in the exercise of ordinary care, have anticipated, when placing this box on the public street in violation of the ordinance and in the manner in which it was placed, that it was likely to result in injury to some one passing along the street. Of course, in this case there can be no negligence imputed to this two-year-old child, and while contributory negligence of the parents was pleaded in this case, this was a matter of substantive defense which could not be made out or evidence tending to establish it produced until after the plaintiff had rested his case.

Another error complained of is that the trial court refused to admit in evidence the ordinance of the city of Cincinnati prohibiting the piling of boxes and materials upon the sidewalk. Upon what ground the court refused to admit this ordinance we are unable to learn from the record. We are of the opinion that it was admissible for the purpose of showing that the defendant in this case violated an ordinance of the city passed manifestly for the safety of the public traveling upon the streets, when he left this box upon this street and sidewalk without any reasonable excuse for leaving it there. But aside from the question as to whether or not the court should have admitted this ordinance in evidence, we are of the opinion that the trial court should have taken judicial notice of this ordinance. The Superior Court of Cincinnati is a court of the city of Cincinnati, and it has been held that that court, as well as every other court of the city of Cincinnati, will and should take judicial notice of the ordinances of Cincinnati. The court of common

pleas does not take judicial notice of the ordinances of the city of Cincinnati because it is not a court of the city, and therefore in trials before that court ordinances of the city of Cincinnati must be offered and admitted in evidence.

We think that the violation of the ordinance by the defendant in this case established a case of negligence *per se*, as was held in the case of *Schell* v. *Dubois*, decided February 29, 1916, by the Supreme Court, in which the court says in the syllabus:

"The violation of a municipal ordinance passed in the proper exercise of the police power in the interest of the public safety, and not in conflict with general laws, is negligence in itself, and where such act of negligence by a defendant is the direct and proximate cause of an injury, not contributed to by want of due care on the part of the injured person, the defendant is liable."

The question of whether or not the violation of this ordinance by the defendant in leaving this box upon the sidewalk was the proximate cause of the death of this child, is one which should have been submitted to the jury under the evidence and proper instructions from the court. There was evidence tending to show that the falling of this box upon this child was the proximate cause of this child's death, and as we have said that the accident itself raises a presumption of negligence, it was for the defendant to explain and show that the box did not fall through his negligence. Where there is a scintilla of evidence in support of the plaintiff's claim the cause must be submitted to the jury, and a motion to arrest the case from the jury should be overruled.

Furthermore, it is claimed that the court erred in permitting counsel for the defendant on cross-examination of two of the plaintiff's witnesses to go into the question of the contributory negligence of the parents of this dead child in permitting it to run out on this street, in view of the fact that it is a dangerous place. It is claimed that the rule laid down in *Legg* v. *Drake*, 1 O. S., 286, was violated when the court permitted counsel for defendant by his cross-examination of plaintiff's witnesses to go into the substantive defense to show contributory negligence.

Many of the questions asked by counsel for defendant were proper. As we understand the rule laid down in the case of *Legg* v. *Drake, supra,* it is that counsel on cross-examination may not only interrogate the witness on matters which have been brought out on direct examination, but may go further and interrogate the witness upon all matters which the party who called the witness might have gone into in order to establish his case or defense. Now it was not incumbent on the plaintiff to show contributory negligence, and we think that in so far as the court permitted counsel for defendant to ask questions which tended to show that the parents of this boy were guilty of contributory negligence, the court erred. But this error was not prejudicial to the plaintiff in error, because the jury were not permitted to pass upon the evidence, to weigh or consider it, or to consider the question of negligence or contributory negligence. The jury were instructed to return a verdict in favor of the defendant, and under such circumstances it was not material what the rulings of the court were with reference to the admission or exclusion of evidence, unless it be that the court arrested the case from the jury under the belief that the plaintiff's own evidence tended to show contributory negligence upon the part of the child's parents which he had failed to remove when he rested his case.

We find no other errors in the record prejudicial to the plaintiff in error.

But for the reasons stated we are of the opinion that the judgment of the court below must be reversed and the cause remanded for a new trial.

JONES (E. H.), P. J., concurs; JONES (Oliver B.), J., dissents in a separate opinion.

JONES (Oliver B.), J., dissenting.

In my opinion the judgment below should be affirmed. The body of Edward George Naas, a two-year-old child, was found in the middle of Campbell alley under a mortar box belonging to the defendant in error. There is no evidence whatever of how this unfortunate condition was brought about. In the ab-

sence of proof, there can be no guessing by either the court or jury to supply missing evidence. *Connelton* v. *Loeb*, 22 C.C. (N.S.), 15; *Ry. Co.* v. *Andrews*, 58 O. S., 426; *Ry. Co.* v. *March*, 63 O. S., 236.

There is no question but that the mortar box which was found upon the child was the property of the defendant and that it had been left out in the alley by his employee, but no negligence on his part is shown by the record, nor is there any evidence to show that he violated any duty with respect to said child walking or playing upon said alley.

The opinion of the majority of the court is based upon the idea that the box was placed upon the sidewalk of the alley in an unstable condition and for that reason fell upon the child, or that it was pushed over by some one. In the latter case, the defendant clearly could not be held, unless it was so placed that as a natural consequence of its position defendant might reasonably apprehend that some one would push it over.

This finding by the majority of the court, however, in my mind is not supported by the evidence. The evidence shows that the box was five or six feet long, about thirty-nine inches in width and from eight to twelve inches in depth; that it was used for hauling mortar in a wagon from defendant's stable to places where he might use it in his trade of plastering. James Malley, the only witness who testified as to the position of the box before the accident, and who was in the employ of the defendant, described its position as lying lengthwise on the narrow sidewalk of the alley and leaning against the stable, the lower part fitting into the curb of the alley, which the evidence shows was one or two inches higher than the brick pavement of the sidewalk. This curb is clearly shown in the photographs which are exhibits in the case. The defendant, George Wingenberg, and George Klug, who was the father of the child who found the body, both testify as to the position of the box after it had been taken off of the child and replaced at the side of the alley. James Malley testifies that this latter position was the same as the position in which he left it before the death of the child. Wingenberg and Klug both say that the box lay lengthwise with its bottom up,

its lower edge resting inside against the curb of the narrow sidewalk and its upper edge resting against the stable.

Taking the dimensions of the sidewalk and of the box as given, a mathematical calculation will show that the box would practically reach a point between two and three feet above the level of the sidewalk upon the side of the stable, and that the angle of the box made both with the sidewalk and with the side of the stable would be in the neighborhood of forty-five degrees, depending upon the exact width of the sidewalk and of the box. These dimensions vary in the testimony of different witnesses. Taking any given dimensions, having the hypothenuse and the base of the triangle known, it requires a simple mathematical calculation to determine the length of its third side—which would be the distance from the sidewalk up the side of the stable to the point at which the upper edge of the box rested. When this is determined, the angle at which the box lay can also be found. Just what each of these dimensions may be is not material, but taking any testimony that is given by the witnesses, they fail to show any position of unstable equilibrium on the part of the box, but instead show that the box was firmly placed, whichever witness is relied upon.

The only testimony that in any way supports the finding of the majority of the court that the box was in a state of unstable equilibrium is that of J. T. Scanlon, in the following words:

"Q. Show the jury how that box stood there on the sidewalk, use this pencil and show us. A. Well, it stood about that way (illustrating) about 85 degrees leaning against the wall, and the sidewalk was only about three and a half feet wide, so that there would not be room to pass outside of it at all."

From the use of the words "85 degrees," the majority of the court have reached the conclusion that the box was almost perpendicular and nearly parallel with the side of the stable. It will be observed that it is not stated whether the 85 degrees is the angle with the level of the sidewalk or with the side of the building, but the rest of the sentence stating that the box was leaning against the wall (not upright, parallel to it) and

that there would not be room to pass outside of it at all, shows that the witness intended to convey the idea that the box practically covered the entire width of the sidewalk—for, as he states, the sidewalk was three and a half feet wide and the box only one foot deep. To rely entirely upon a statement that the box was at an angle of 85 degrees and put it nearly parallel with the stable wall, would leave about two feet of the sidewalk free, which would be inconsistent with the rest of the sentence. An examination of the testimony of this witness will show that he was not accurate in his statements, and in my opinion this statement does not conflict with that of the other witnesses that the box covered practically the entire sidewalk and was placed in a firm and stable position and not in a position of unstable equilibrium.

Such being my conclusion drawn from the record, as to the position of the box, it could not have fallen upon the child merely by its own weight, nor could the young child have pulled the box over upon itself, but the interposition of some other considerable force was necessary in order to bring the box into the position in the alley on top of the child. What that force was is not disclosed by the record.

I can not agree that this record shows a case of *res ipsa loquitur*. It is not a case of a box moving or falling out of a building of defendant which would require an explanation from him, as the electric truck in *Roth Packing Co.* v. *Williams*, 20 C.C.(N.S.), 362, or the falling of the trolley pole in the case of *Traction Co.* v. *Holzenkamp*, 74 O. S., 386.

While it is admitted that the box was the property of the defendant, it was not at the time of the accident either on his premises or under his direct management and control, but had been left by his servant on the public street. This was a violation of the city ordinance, but was not the proximate cause of the injury to the plaintiff's intestate. The purpose of the ordinance was to prevent the obstruction of the street, as stated in its own terms, "so as to prevent citizens from passing along such sidewalk." The accident was not caused because of the fact that the box

obstructed the street, but because through some unknown agency the box was thrown upon the child.

To my mind, this does not make a case of negligence *per se* under the rule laid down in· the recent case of *Schell* v. *Dubois*, referred to by the court in the majority opinion.  It should be controlled rather by the case of *Wilde, Jr.*, v. *Ohio Knife Co.*, 18 N.P.(N.S.), 373, which was recently affirmed by this court without opinion.　　.

This question of liability for injuries to a child arising from a nuisance is fully discussed and the authorities reviewed in the two cases of *R. R. Co.* v. *Harvey* and *Swarts* v. *Akron W. W. Co.*, reported together in 77 O. S., 235, in which attention is called to *Friedman* v. *Snare & Triest Co.*, 71 N. J. L., 605, where a child was injured while playing upon iron girders left piled upon the street.

The rejection of the ordinance by the court below, when offered in evidence, did not constitute prejudicial error for the reasons stated in the majority opinion that the Superior Court of Cincinnati takes judicial notice of general ordinances of the· same city, and for the further reason, as I think, that the violation of the ordinance in this case was not negligence *per se*.